884 P.2d 214

**Billy Lee LITTLE, Jr., and Robert A. Hirschfeld, Petitioners,**

v.

**SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, The Honorable Brian R. Hauser, a judge thereof, Respondent Judge,**

**Lisa LITTLE, Real Party in Interest.**

**No. 1 CA–SA 94–0045.**

Court of Appeals of Arizona, Division 1, Department C.

May 3, 1994.

Review Granted on issue A and Denied on other issues Nov. 29, 1994.

Order Granting Review Vacated, Review Denied, and Motion to Depublish Denied March 6, 1995.*

---

* Chief Justice Feldman dissents from this order because he believes that the Court of Appeals should have affirmed the trial court's order on the issue presented: Mr. Little and his attorney violated the trial judge's preliminary injunction by seizing Mrs. Little's automobile and selling it. Justice Feldman would therefore have granted the motion to depublish the opinion. [Editor's Note: This order will also be separately published in a later volume.]

Cheifetz, Pierce, Cochran & Mathew, P.C. by Claudio E. Iannitelli and Robert A. Hirschfeld, Phoenix, for petitioners.

Janet Phillips, Phoenix, for real party in interest.

## OPINION

KLEINSCHMIDT, Judge.

■ In this special action, the Petitioners, Billy Little and his attorney Robert Hirschfeld, argue that the trial court abused its discretion when it found them in contempt of court for violating a preliminary injunction and when it ordered them to pay Lisa Little $9,350, as restitution. Contempt orders are not appealable but are reviewable in appropriate circumstances by special action. *Riley v. Superior Court*, 124 Ariz. 498, 499, 605 P.2d 900, 901 (App.1979). We accept juris-

diction because the issue presented has not been previously addressed, and because it is of general interest and importance.

Billy and Lisa Little sought a dissolution of their marriage. After the action was filed, the trial court issued a preliminary injunction, in accordance with Arizona Revised Statutes Annotated ("A.R.S.") section 25–315(A), enjoining both Billy and Lisa from "transferring, encumbering, concealing, selling or otherwise disposing of any of the joint, common or community property of the parties *except* in the usual course of business or *for the necessities of life,* without the written consent of the parties or the permission of the court." (Emphasis added.)

Billy Little acknowledged that he received and understood the injunction, but, on the advice of his attorney, Billy or someone acting on his behalf went to Glendale Community College, where Lisa Little attended school, took a 1993 Dodge van which Lisa had been driving, and left her with Billy's truck in its place. Lisa's attorney objected to Billy's selling the van. Nonetheless, Billy did sell it for about $5,000 less than its market value. He used the proceeds to pay his attorney's fees and to purchase a less expensive vehicle for himself. The court found Billy Little and Robert Hirschfeld in contempt of court for violating the preliminary injunction.

■ The Petitioners argue that the sale of the van did not violate the injunction because Billy used the proceeds for "necessities of life" which are exempted from the protection of the injunction. They assert that "legal services become a necessity of life for a respondent spouse who wishes to protect his or her rights afforded by law."

There are several reasons why the Petitioners' argument is not persuasive. We have recognized, in other contexts, that necessities of life include such things as food, clothing, shelter, medical care and transportation. *State v. Morris*, 173 Ariz. 14, 19, 839 P.2d 434, 439 (App.1992). They are necessities because they are commonly required by everyone for the basic sustenance of life. *See Lentfoehr v. Lentfoehr*, 134 Cal.App.2d Supp. 905, 286 P.2d 1019, 1021 (Cal.Super.1955). Attorney's fees are not normally

thought of as being in the same elemental category.

Further, A.R.S. section 25–324 addresses the award of attorney's fees in domestic relations cases. It provides that the court may, from time to time, after considering the financial resources of both parties, order a party to pay a reasonable amount to the other party for attorney's fees for maintaining or defending any dissolution of marriage proceeding. The obvious purpose of the statute is to ensure that parties have the wherewithal to litigate the action. *Garrett v. Garrett,* 140 Ariz. 564, 569, 683 P.2d 1166, 1171 (App.1983). Another statute, A.R.S. section 25–315(E), provides that "[t]he court may also make temporary orders respecting the property of the parties, as may be necessary."

Certainly, the terms of A.R.S. sections 25–324 and 25–315(E), together with the power of the court under A.R.S. section 25–315(A)(1)(a) to alter the injunction entered at the outset of the dissolution action, are broad enough to allow the sale of community property to pay attorney's fees if the court deems it necessary to do so. Because the legislature provided a means for a party to seek leave to pay fees, it seems doubtful to us that it intended to include fees within the meaning of "necessities of life" which are not covered by the injunction. Billy's resort to self-help in the face of an adequate method of seeking the court's aid in hiring an attorney was a clear violation of the preliminary injunction.

We realize that in some jurisdictions, such as California[1] and Illinois,[2] parties to an action for dissolution may dispose of marital property for the purpose of paying attorney's fees. In both those states, however, the disposal of property to pay such fees is expressly excluded from the provisions of the restraining order which is entered at the commencement of a dissolution action. If the Arizona legislature had wanted to effect such a policy, it could easily have done so.

The Petitioners cite to a number of cases, arguing that legal services rendered to a wife are necessities for which a husband may be liable. *Pelusio v. Pelusio,* 130 N.J.Super. 538, 328 A.2d 10 (A.D.1974); *Wolf v. Friedman,* 20 Ohio St.2d 49, 253 N.E.2d 761 (1969); *Citizens and Southern Nat'l Bank v. Orkin,* 223 Ga. 385, 156 S.E.2d 86 (1967); *Weiss v. Melnicove,* 218 Md. 571, 147 A.2d 763 (1959); *Read v. Read,* 119 Colo. 278, 202 P.2d 953 (1949); *Brook v. Morriss, Morriss & Boatwright,* 212 S.W.2d 257 (Tex.Civ.App. 1948); *Stone v. Conkle,* 31 Cal.App.2d 348, 88 P.2d 197 (1939); *Elder v. Rosenwasser,* 238 N.Y. 427, 144 N.E. 669 (1924); *Conant v. Burnham,* 133 Mass. 503 (1882); *Morris v. Palmer,* 39 N.H. 123 (1859). All of these cases, however, deal with the doctrine of necessities, i.e., the liability of a husband for debts incurred by a wife. None involves the ability of a spouse to dispose of community property and spend the money for legal services for himself despite an injunction forbidding the transfer of community property. The purpose of the doctrine of necessities is to ensure that spousal obligations are paid whereas the purpose of the injunction is to prevent the dissipation of community assets. The authorities cited fail to persuade us that the injunction does not extend to the sale of community assets to pay one's own attorney's fees.

---

1. California Family Code § 2040 provides that a temporary restraining order will be used "restraining both parties from transferring, encumbering, hypothecating, concealing, or in any way disposing of any property, real or personal, whether community, quasi-community, or separate, without the written consent of the other party or an order of the court, except in the usual course of business or for the necessities of life ... *However, nothing in the restraining order shall preclude the parties from using community property to pay reasonable attorney's fees* in order to retain legal counsel in the proceeding." (Emphasis added.)

2. Illinois Revised Statutes chapter 750, sec. 5/501.1 provides that a preliminary injunction "restrains both parties from transferring, encumbering, concealing, destroying, spending, damaging, or in any way disposing of any property, without the written consent of the other party or order of the Court, except in the usual course of business, for the necessities of life, or for the reasonable costs and expenses, and *attorney's fees arising from the proceedings.*" (Emphasis added.)

The Petitioners also argue that some of the proceeds from the sale of the van were used to buy another car and that such is a necessity of life. While transportation is a necessity of life, *Morris,* 173 Ariz. at 19, 839 P.2d at 439, there is no showing in the record that Billy Little needed a new car for essential transportation. He already had a truck.

The Petitioners next argue that the phrase "necessities of life" is ambiguous so that it does not give adequate notice to Billy that his conduct would violate the injunction. We disagree because "the language used in the injunction conveyed sufficiently definite warning as to the proscribed conduct when measured by *common understanding and practices.*" *Stone v. Godbehere,* 894 F.2d 1131, 1133 (9th Cir.1990).

Finally, the Petitioner Hirschfeld argues that even if the attorney's fees and the purchase of the car do not constitute "necessities of life," the record does not support a finding of contempt against him because it does not disclose that he was the attorney who advised Little to sell the van. To support his argument, he points out that he is the second attorney who has represented Billy Little in this action.

On this subject, the evidence reveals that Matthew McDevitt, Billy Little's friend, testified without objection on both direct and cross-examination that Billy Little told him that "[Billy Little] had confirmed it with his attorney, and his attorney advised him that he should take the van," and that "his attorney had advised him ... that he should take the van and, you know, pay for his attorney's fees with it or whatever." Based on the record before us, McDevitt's testimony was admissible and uncontradicted. *See Velasco v. Mallory,* 5 Ariz.App. 406, 413, 427 P.2d 540, 547 (1967) (hearsay evidence received without objection is sufficient to establish a fact and may be given the value of direct and competent evidence).

It is true that McDevitt's testimony does not reveal the name of the attorney who advised Little to sell the van. However, Billy removed Lisa's van on September 21, 1993. Immediately thereafter he tried to sell the van to a car dealer. On September 24, 1993, the attorney for the car dealer·called Robert Hirschfeld regarding the preliminary injunction and the dealer refused to proceed with the sale. It is obvious from this that Hirschfeld was acting as Billy Little's attorney as early as September 24, 1993. Several weeks thereafter, Billy sold the van to another dealer. The trial judge could reasonably infer from the sequence of events that Hirschfeld was the attorney who advised Billy to proceed with the sale.

The trial court did not abuse its discretion in finding the Petitioners in contempt of court for violating a preliminary injunction and in ordering them to pay Lisa Little $9,350, which constitutes Lisa's share in the fair market value of the van. This was a remedy available under A.R.S. section 25–315(G)(5), which authorizes the court to enjoin the disposal of property and provides specific means for enforcing the injunction including "any other civil or criminal remedies available." Accordingly, jurisdiction is accepted but relief is denied. Lisa Little's request for attorney's fees and costs on this special action is granted.

LANKFORD, P.J., and EHRLICH, J., concur.