960 P.2d 640

**In the MATTER OF Suspended Member of the State Bar of Arizona, Robert A. HIRSCHFELD. Respondent.**

No. SB–97–0003–D.

Disc. Comm. Nos. 89–0868, 90–1307, 91–1015, 93–0378, 93–0712, 93–1403, 93–1609, 93–1787, 93–1806, 93–1831, 94–0392, 94–0853, 94–0859, 94–0863, 94–0864, 94–0959, 94–0973, 94–0977, 94–1065, 94–1215, 94–1227, 94–1708, 94–1755 and 95–0305.

Supreme Court of Arizona,
En Banc.

July 28, 1998.

He also moved to strike portions of the State Bar's answering brief. We reject respondent's jurisdictional arguments, deny his motion to strike, and find that the charges of unethical conduct are well supported by the evidence and legally sound. Considering the extensive aggravation presented and the lack of any significant mitigation, we agree that disbarment is appropriate.

## JURISDICTION

¶ 3  Respondent contends that he is no longer subject to the court's disciplinary authority because he "voluntarily disassociated" himself from the State Bar during the pendency of these proceedings. Although our rules once permitted resignation in lieu of disbarment, they currently require a lawyer to be in good standing in order to resign. Ariz. R.S.Ct. 31(c)(10). Respondent has not cited, nor do we find, legal authority that would deprive this court of jurisdiction to impose sanctions on him or any other person admitted to practice law in this state.

¶ 4  In an analogous context, we have held that it is proper to discipline a lawyer who becomes a judge for conduct occurring prior to his taking office. *See In re Riley*, 142 Ariz. 604, 607, 691 P.2d 695, 698 (1984). "[T]he better and more workable practice is that jurisdiction in disciplinary actions should be based upon the position the individual held at the time of the alleged misconduct." *Id.* Thus, regardless of respondent's claimed renunciation of his bar membership, he cannot escape the consequences of his unethical activities.

Robert A. Hirschfeld, Phoenix, in pro. per.

Yigael M. Cohen, Bar Counsel, Phoenix, for State Bar of Arizona.

## OPINION

ZLAKET, Chief Justice.

¶ 1  This matter comes to the court on the unanimous recommendation of a State Bar hearing committee and our own Disciplinary Commission that respondent Robert A. Hirschfeld be disbarred. We have jurisdiction pursuant to Ariz. R.S.Ct. 53(e).[1]

¶ 2  The State Bar charged respondent with twenty-four counts of unethical conduct involving twenty-two different clients. Although he was given notice and an opportunity to be heard, respondent did not participate in the presentation of evidence to the hearing committee, nor did he appear before the Disciplinary Commission. He did, however, file a notice of appeal and several briefs with this court, challenging our authority over him and contesting the validity of certain charges.

## BACKGROUND

¶ 5  The current disciplinary action is the culmination of a lengthy history. In May of 1994, the State Bar moved for respondent's interim suspension pursuant to Ariz. R.S.Ct. 52(c). A superior court judge had earlier imposed a sizeable monetary sanction on him for disclosure violations in a domestic relations matter, the details of which can be found in several published opinions. *See*

---

1. The Disciplinary Commission issued its report five days before a rule change that made our review of these matters discretionary. Under the previous rule, applicable here, respondent is entitled to an appeal as a matter of right.

*Taliaferro v. Taliaferro,* 184 Ariz. 613, 911 P.2d 619 (App.1995), *vacated by* 186 Ariz. 221, 921 P.2d 21 (1996); *Taliaferro v. Taliaferro,* 188 Ariz. 333, 335, 935 P.2d 911, 913 (App.1996). The superior court had also issued an arrest warrant for respondent when he failed to appear at various Order to Show Cause hearings intended to determine why the sanctioned amount had not been paid. To avoid service of the warrant, respondent allegedly fled the jurisdiction. Before absconding, he apparently attempted to find substitute counsel for his pending matters, but was not completely successful. Consequently, several clients were left unrepresented during his absence. Some of them filed complaints that are at issue in this proceeding.

¶ 6  Following oral argument in 1994, this court denied the suspension motion because the record at that time was insufficient to support the desired relief. We did, however, place respondent on probation under the supervision of a practice monitor until the State Bar could proceed to a "final determination of the various charges against [him]." *In re Hirschfeld,* SB–94–0049–D (Ariz. May 25, 1994) (order).

¶ 7  Thereafter, the superior court held respondent in contempt for abusing and harassing the opposing party in another domestic relations matter. *See Hirschfeld v. Superior Court,* 184 Ariz. 208, 908 P.2d 22 (App. 1995). This action followed an evidentiary hearing that prompted the judge to remark, "I find that [respondent's] testimony justifying those actions to be disingenuous at best, incredible, possibly perjurious." *Id.* at 211, 908 P.2d at 25. The State Bar filed a second motion for interim suspension. During the same time period, respondent's practice monitor resigned and the Bar began intensively investigating the complaints that have resulted in this appeal.

¶ 8  After again hearing oral argument and considering the matter further, we determined that respondent's continued practice of law would result in substantial harm, loss, or damage to the public, the legal profession, and the administration of justice. Thus, we entered an order of interim suspension under Ariz.R.S.Ct. 52(c). *In re Hirschfeld,* SB–95–0033–D (Ariz. June 7, 1995).

## FACTS

¶ 9  The twenty-four counts against respondent present a variety of transgressions. The largest category is made up of clients who were left unrepresented at hearings, trials, and other matters when respondent fled the jurisdiction in 1994 to avoid his sanction. The next group includes those clients who entered into what respondent calls "non-refundable retainer" agreements.

¶ 10  Respondent's misconduct regarding the first group is unquestionable. He clearly abandoned clients without notice in order to serve his own interests, leaving them to fend for themselves until he returned. This behavior violated Ethical Rules 1.3 and 1.4.

¶ 11  Eight of the counts involved so-called "non-refundable retainers." Respondent typically represented husbands in dissolution and custody proceedings. His custom was to obtain a significant retainer at the inception of the representation, with a written fee agreement that stated: "The initial retainer is earned upon receipt and is non-refundable." He repeatedly relied on this clause to keep the full amount received, no matter how long he represented the client or how much work he performed.

¶ 12  One of the most egregious incidents involved a client who paid him $8000 for representation in a dissolution action. A few days later, the client and his wife reconciled. The reasonable value of respondent's professional services at that point was $2000. Nevertheless, he refused to return the unearned portion of the $8000, citing the fee agreement.

¶ 13  In addition to the non-refundable language, respondent's fee agreements provided: "If there is any disagreement concerning the terms of this agreement or attorneys' fees, I agree to binding arbitration with the Fee Arbitration Committee of the State Bar of Arizona." In a number of instances, clients sought relief from the Fee Arbitration Committee. Respondent appeared at some but not all of the arbitration proceedings. He lost every fee dispute. Although the

awards required him to return a portion of the retainers, he did not comply.

¶ 14   Other allegations against respondent run the gamut of unethical conduct.  In one matter, for example, he filed an ex parte request for emergency custody supported by two affidavits prepared by him and signed by the client.  The affidavits contained material misrepresentations that respondent would have discovered had he exercised reasonable diligence.  The trial court imposed Rule 11 sanctions against him.  In another matter, respondent and his client were held in contempt and ordered to pay $9350 in sanctions for violating the terms of the preliminary injunction that is issued in every dissolution action.  *See Little v. Superior Court*, 180 Ariz. 328, 331, 884 P.2d 214, 217 (App.1994). In yet another, he advised a client to sign a financial disclosure form attesting that no third party was holding funds for him or on his behalf.  The statement was plainly false because respondent was in possession of certain savings bonds that the client had given him.  In still another case, he declared in open court that the opposing attorney, who represented his client's estranged wife, had taken the case only after she had "hiked up her skirt" for him.  The comment was clearly inappropriate and made solely to abuse and harass the wife and her lawyer.  The trial judge imposed sanctions on respondent after determining that no truthful basis for the allegations existed.

## DISCUSSION

¶ 15   Both the hearing committee and the Disciplinary Commission found respondent's refusal to refund the unearned portions of the retainers to be a violation of Ethical Rule 1.5.  We agree.  The rule's requirement is plain and simple: "A lawyer's fee shall be reasonable." Ethical Rule 1.5(a) lists eight factors to be considered in making such a determination.  A detailed analysis of those factors is not needed here because the uncontested evidence establishes the unreasonableness of respondent's fees. In each instance, either the client discharged him because of dissatisfaction with his performance, or the matter concluded before he provided sufficient legal services to earn the entire

retainer according to his agreed-upon hourly rates.

¶ 16   Respondent makes no attempt to justify his fees.  Instead, he takes the approach that they are private contractual matters between himself and his clients, and not the concern of anyone else. He suggests that this court has no power to interfere. He is wrong.  Many years ago, we made it clear that a fee agreement between lawyer and client is more than a mere business arrangement.

> The profession has both an obligation of public service and duties to clients which transcend ordinary business relationships and prohibit the lawyer from taking advantage of the client. Thus, in fixing and collecting fees the profession must remember that it is "a branch of the administration of justice and not a mere money getting trade."  We hold, therefore, that if at the conclusion of a lawyer's services it appears that a fee, which seemed reasonable when agreed upon, has become excessive, the attorney may not stand upon the contract; he must reduce the fee.

*In re Swartz*, 141 Ariz. 266, 273, 686 P.2d 1236, 1243 (1984)(citation omitted).   The foregoing is particularly true in the emotionally volatile area of domestic relations.  Respondent's clients usually engaged him at extremely difficult periods in their lives. They frequently had been served with petitions for dissolution and injunctions prohibiting them from entering their own homes.  In some cases, they faced imminent hearings to determine the custody of their children.  Under the circumstances, they were vulnerable to overreaching fee agreements and respondent took advantage of that vulnerability.

¶ 17   We do not hold that non-refundable retainers are per se violations of Ethical Rule 1.5.  A retainer, in its classic sense, is a fee paid to secure a lawyer's availability, and it may be appropriate in certain circumstances.  Similarly, a flat fee charged for specific legal services can be proper. Regardless of how the fee is characterized, however, each situation must be carefully examined on its own facts for reasonableness. Under *Swartz*, lawyers are obligated to review the services they have rendered to determine whether the fees ul-

**44**

timately collected are reasonable. 141 Ariz. at 273, 686 P.2d at 1243. In this case, the fees respondent pocketed were clearly unreasonable. Additionally, his promise to arbitrate fee disputes implied that the amounts paid were subject to independent review, and placed upon respondent an obligation to participate in the arbitration process in good faith, which, of course, he did not do.

## SANCTION

¶ 18   Both the hearing committee and the Disciplinary Commission found substantial aggravating factors and no significant mitigation. American Bar Association, *Standards for Imposing Lawyer Sanctions* §§ 9.22, 9.32 (1986); *see also In re Rivkind,* 164 Ariz. 154, 157, 791 P.2d 1037, 1040 (1990) (observing that the ABA standards are a "suitable guideline in imposing discipline"). We agree.   Respondent has prior disciplinary offenses. His actions here reflect dishonest and selfish motives. *Standards, supra,* at § 9.22. He has demonstrated a clear pattern of willful misconduct. *Id.* Those he has professed to serve with zeal, his clients, are those he has harmed the most. He continues to exhibit not only indifference but outright defiance to making restitution. *Id.*

¶ 19   In his submissions to this court, respondent claims to be the victim of an organized vendetta by judges, opponents, bar officials, and anyone else who has disagreed with him because of his promotion of the "Fathers' Rights Movement." We wish to be clear about why he is being disbarred. It is because he has lied to judges, cheated and abandoned clients, and acted in despicable ways toward his opponents. Respondent has manifested an unabashed willingness to violate court rules, ethical precepts, and even common decency in pursuit of his perceived goals.

¶ 20   Disbarred.

JONES, V.C.J., and FELDMAN, MARTONE and MOELLER(Retired), JJ., concur.