SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| In the Matter of | ) Arizona Supreme Court |
| | ) No. SB-02-0055-D |
| THOMAS M. CONNELLY, | ) |
| Attorney No. 12987 | ) Disciplinary Commission |
| | ) No. 99-2417 |
| | ) |
| Respondent. | ) **O P I N I O N** |
| _____ | ) |

_____

Appeal from Hearing Officer 9Y's Report and Recommendation
Anne Phillips, Hearing Officer
VACATED

_____

Decision of the Disciplinary Commission
No. 99-2417
VACATED

_____

State Bar of Arizona                                        Phoenix
By   Yigael M. Cohen, Director of Lawyer Regulation
Attorney for the State Bar of Arizona

Hinshaw & Culbertson                                       Phoenix
By   Brian Holohan
Attorney for Thomas M. Connelly

Thomas J. Marlowe                                          Phoenix
Attorney for Thomas M. Connelly

_____

M c G R E G O R, Vice Chief Justice

¶1      This matter arose after Respondent Connelly's client filed a complaint with the State Bar, alleging that Respondent charged an unreasonably high fee. We granted review to determine whether, when a client who has contractually agreed to submit fee

disputes to binding arbitration files a complaint alleging his lawyer charged an unreasonable fee, disciplinary proceedings should begin before fee arbitration proceedings conclude. We hold that when a lawyer and client have agreed to binding fee arbitration and the disciplinary complaint involves no allegations of other misconduct, the State Bar should await the conclusion of fee arbitration proceedings before initiating formal disciplinary proceedings. We also consider the appropriate standard to use in evaluating whether an attorney's fee constitutes a reasonable fee.

## I.

¶2 Police arrested Gregory Richman in July 1998 and confiscated three grams of cocaine from his vehicle. After his release, Richman sought advice from Thomas M. Connelly, an experienced criminal defense attorney who had represented Richman in an earlier matter. Connelly told Richman to do nothing until the county attorney contacted him. In November 1998, Richman received a summons indicating a grand jury had indicted him for possession of narcotic drugs, a class four felony. Richman promptly notified Connelly of the charges against him.

¶3 When Connelly saw the indictment, he noted that although Richman was indicted for only a single charge of possession, the indictment set out seventy-four separate counts and named approximately twenty defendants. Based on the indictment and Connelly's knowledge about the attorney who had prepared the

2

summons, Connelly told Richman he believed Richman's case would not remain a simple possession case but would involve considerable discovery, a motion to sever and a motion to suppress. Connelly estimated that absent a successful motion to sever, and should Richman's case go to trial, the case could take eight months to two years to resolve. In addition, Connelly told Richman he might face either jail or prison time.

¶4 Connelly, Richman and Richman's mother, an attorney in Chicago, discussed Connelly's fee on two occasions. Due to the difficulty he thought the case presented, Connelly initially stated his fee would be $75,000. After negotiations, however, he reduced that figure to $50,000 and discussed various flat fee options with Richman and his mother. Over the next several days, Richman considered the available fee options and agreed to a $50,000 "non-refundable" flat fee that would cover the entire case, excluding appellate matters. Connelly sent a fee agreement form to Richman for his signature. After asking Connelly to clarify portions of the form, Richman signed and returned the $50,000 flat fee agreement on January 4, 1999. Under the terms of the fee agreement, Connelly and Richman agreed to resolve any fee dispute through binding arbitration.

¶5 The state filed no additional charges against Richman, and Connelly resolved the case without filing any motions or proceeding to trial. Connelly negotiated the TASC diversion

3

program[1] for Richman which, upon Richman's successful completion, would result in a dismissal of criminal charges. The county attorney's office moved to suspend Richman's prosecution on April 7, 1999, approximately three months after Connelly began representing Richman.

¶6    In December 1999, after Richman successfully completed TASC and the court dismissed the charges against him, Richman filed a bar complaint accusing Connelly of charging an unreasonable fee. Richman had neither told Connelly of his dissatisfaction with the fee nor sought fee arbitration.

¶7    The State Bar initiated this disciplinary proceeding shortly thereafter.[2] When Connelly learned of Richman's complaint, he conducted a retrospective review of his representation and fee, which included speaking with three other experienced criminal lawyers, and concluded that he had charged a reasonable fee. The State Bar subsequently filed a formal complaint against Connelly.[3]

¶8    At his disciplinary hearing, Connelly presented an

---

[1]    The TASC Drug Diversion Program is "a special supervision program in which the county attorney of a participating county may divert or defer, before a guilty plea or a trial, the prosecution of a person accused of committing a crime." Ariz. Rev. Stat. § 11-361 (2001).

[2]    "A discipline proceeding commences upon receipt by the state bar of a charge against a respondent." Ariz. R. Sup. Ct. 53(a).

[3]    "Formal discipline proceedings shall be instituted by the state bar filing a complaint. . . with the disciplinary clerk." Ariz. R. Sup. Ct. 53(c)1.

4

accounting, prepared subsequent to the filing of the bar complaint, of the hours he had spent on Richman's case. According to that document, Connelly and his associate spent 116.8 hours on Richman's case, and based on respective hourly rates of $200 and $350, earned $38,015.[4] Connelly testified that his representation of Richman included drafting a discovery request, reviewing an eighteen-page discovery response and looking at other significant evidence, including wiretap transcripts and police reports that referred to Richman. Connelly also testified that Richman was a very difficult and needy client who called and dropped by the office frequently.

¶9        Connelly's expert witness, Michael Black, stated that he viewed Connelly's fee as reasonable, both prospectively and retrospectively. He testified that he would have charged Richman between $75,000 and $100,000. The State Bar's expert witness, Michael Kimerer, testified that a reasonable fee in this case, considered retrospectively, would have been in the range of $20,000 to $25,000.

¶10       Analyzing Connelly's fee pursuant to Ethics Rule (ER) 1.5, Ariz. R. Sup. Ct. 42, the Hearing Officer found that Connelly

---

[4] Connelly's accounting included an estimate of hours spent working on "[o]ther conferences/meetings/telephone calls with or from Richman between December 1998 and November 1999." Hearing Officer's Report and Recommendation at 6. Connelly explained the lack of specificity by stating he took very few notes regarding meetings and discussions with Richman because Richman would call or come by to see Connelly when Connelly was working on another matter. *Id.*

did not initially violate ER 1.5 by charging $50,000 because the case originally appeared labor-intensive and Connelly had substantial experience in this area. The Hearing Officer also found, however, that Connelly's fee constituted an excessive and unreasonable fee when viewed retrospectively at the conclusion of representation.

¶11    The Hearing Officer recommended that Connelly be censured and required to pay Richman restitution in the amount of $11,985, the difference between $50,000 and $38,015. Connelly appealed, and the Commission affirmed the Hearing Officer's recommendation of censure. In addition, the Commission increased the amount of restitution to $25,000 because it did not find Connelly's hourly reconstruction credible and because Kimerer had testified that $25,000 constituted a reasonable fee.

¶12    We granted Connelly's petition for review and exercise jurisdiction pursuant to Article VI, Section 5.6 of the Arizona Constitution and Ariz. R. Sup. Ct. 53(e)5.

## II.

¶13    Connelly asserts that the State Bar should have referred Richman's complaint to the fee arbitration program rather than initially treat the complaint as a formal disciplinary matter. Under the facts of this case, we agree.

## A.

¶14    Connelly and Richman signed a fee agreement that included

6

the following language:

> Should there be any disagreement or dispute concerning or arising out of or relating to our services, fees or costs, or our relationship with you, and in the event they are not capable of resolution between the Attorneys and Client, *the Attorneys and Client both agree to final and binding arbitration under the procedures of the State Bar of Arizona for resolving such matters.*

(Emphasis added.) Despite that agreement, Richman filed a bar complaint against Connelly rather than submit the dispute to binding arbitration. At the disciplinary hearing, Connelly testified that he suggested fee arbitration to bar counsel when notified of Richman's complaint and the disciplinary proceeding against him.[5] Although the record is unclear, Bar Counsel's remarks indicate that he discussed fee arbitration with Richman but Richman "felt that he was not going to be successful at [fee arbitration]." Tr. of Disciplinary Comm'n Hr'g at 18. Bar Counsel also stated that the decision to go to fee arbitration rested with Richman, and that "fee arbitration is not within the purview of the State Bar." *Id.*

**B.**

¶15 Both disciplinary proceedings concerning the reasonableness of a lawyer's fee and fee arbitration proceedings center around ER 1.5, which states that "[a] lawyer's fee *shall be*

---

[5]    The Hearing Officer asked Connelly why the case did not go to fee arbitration. Connelly replied that either the State Bar or Richman, he did not know which, declined arbitration when he suggested it early in the disciplinary proceedings. Tr. of Disciplinary Hearing Proceedings at 277-78.

7

*reasonable*" and then goes on to enumerate eight "factors to be considered *in determining the reasonableness of a fee*." Ariz. R. Sup. Ct. 42, ER 1.5(a) (emphasis added). Although the two proceedings involve similar issues, they do not serve precisely the same purpose.

¶16     The purpose of fee arbitration is to provide a forum "for the *resolution* of fee disputes." Ariz. R. Sup. Ct. 42, ER 1.5, Comment, Disputes over Fees (emphasis added); *see also* Rules of Arbitration of Fee Disputes, State Bar of Ariz. Fee Arbitration Comm. (Rules of Arbitration of Fee Disputes) I.A ("The purpose of the . . . Fee Arbitration Committee . . . is to provide a forum for the binding arbitration of fee disputes."). When a fee dispute goes to arbitration, "[t]he issue before a sole arbitrator or a fee arbitration panel . . . as set forth in ER 1.5 . . . is whether the fees charged were reasonable for the work that was performed." *Id*. at III.A. After considering the reasonableness of the fee charged, the arbitrator enters a specific award that "is final and binding upon the parties and . . . such award may be enforced by any court of competent jurisdiction." *Id*. at IV.B.3.

¶17     A formal disciplinary action brought under ER 1.5 considers whether a lawyer's fee in a specific case falls within the range of  reasonable fees for the services performed. If the lawyer's fee is deemed unreasonable under ethical standards, a formal disciplinary proceeding also determines what sanction to

8

impose.  *See* Ariz. R. Sup. Ct. 47(f)2, 48(d)3, 51(b).

¶18    The potential overlap between these two proceedings is evident.  Several differences between them, however, support the conclusion that the State Bar should utilize fee arbitration before considering whether formal disciplinary action should follow. First, the State Bar's announced policy encourages lawyers to submit fee disputes to arbitration.  The Comment to ER 1.5 urges that "[e]ach lawyer should conscientiously consider submitting to [fee arbitration]."  Ariz. R. Sup. Ct. 42, ER 1.5, Comment, Disputes over Fees.  Because the Fee Arbitration Committee "shall not have jurisdiction over a dispute . . . [i]f an action on the dispute already is pending in another forum," Rules of Arbitration of Fee Disputes II.B.3, initiating disciplinary action precludes parties from utilizing the preferred method of arbitration.  We do not approve of a procedure through which the State Bar encourages fee arbitration on the one hand and, on the other, undermines arbitration agreements by imposing discipline before allowing the arbitration procedure to work.

¶19    Proceeding first to arbitration is particularly important when, as occurred here, an attorney and client have explicitly agreed to binding arbitration in the event of a fee dispute.  By rejecting Connelly's request that the matter first proceed to fee arbitration, the State Bar, in effect, allowed Richman to sidestep

9

his contractual obligation to arbitrate the fee dispute.[6]

¶20     Fee arbitration proceedings provide a better setting for initially resolving fee disputes for other reasons.  The parties are more likely to obtain a prompt resolution through arbitration. The pertinent rules direct that an arbitration hearing be set within ninety days after receipt of an agreement to arbitrate. *Id.* at VII.A.  In disciplinary matters, in contrast, a hearing date should be set within 150 days of filing a complaint.  Ariz. R. Sup. Ct. 53(c)6.  The burden of proof also differs between fee arbitration and formal disciplinary proceedings.  In arbitration, the attorney bears the burden of showing, by a preponderance of the evidence, that she charged a reasonable fee.  Rules of Arbitration of Fee Disputes VI.F.  In formal disciplinary proceedings, the State Bar must establish the allegations of the complaint by clear and convincing evidence.  Ariz. R. Sup. Ct. 54(c),(d).  Both distinctions can benefit a client seeking a prompt resolution of a fee dispute.

¶21     Finally, because fee arbitration determines whether a lawyer charged a reasonable fee and, if not, the amount that represents a reasonable fee, the award provides valuable information for a formal disciplinary hearing, if one follows.  For

---

[6]     The State Bar points out that it cannot force both parties to participate in arbitration.  By initiating formal disciplinary proceedings, however, the State Bar, and not the parties or a court, determined not to enforce the parties' agreement to arbitrate.

all those reasons, we conclude that fee arbitration provides the appropriate forum for determining what constitutes a reasonable fee for work performed in a particular case.

## C.

¶22    In its brief, the State Bar presents several arguments to support the proposition that it acted appropriately by initially treating Richman's complaint as a formal disciplinary matter. First, the Bar argues that because fee arbitration is voluntary, it cannot force the parties to use that procedure. The Bar's concerns are misplaced here, however, because Richman and Connelly *had already agreed to binding arbitration*.

¶23    The Bar also expresses concern that, if both parties agree to arbitration, it will lose its opportunity to initiate formal disciplinary proceedings. The result, the Bar asserts, is that the Bar can only discipline some attorneys who charge unreasonable fees but cannot discipline others. Our holding, however, does not prevent the State Bar from filing a formal complaint to commence formal disciplinary proceedings once fee arbitration proceedings have concluded, if such proceedings appear appropriate.

¶24    The State Bar also urges that requiring enforcement of an agreement to arbitrate before instituting formal disciplinary proceedings could delay an investigation into activities that cause public harm. That danger results, the Bar states, from the fact

11

that most complaints involving excessive fees also involve allegations of other ethical violations. *See, e.g., In the Matter of Hirschfeld*, 192 Ariz. 40, 42 §§ 9-11, 960 P.2d 640, 642 (1998). We agree that the State Bar should retain discretion to treat complaints involving matters other than a simple fee dispute in a way that prevents public harm. This action, however, involves no other allegations of misconduct.

¶25     We conclude that the State Bar should follow its policy of encouraging lawyers and clients to resolve fee disputes through arbitration. We hold, therefore, that the State Bar should not have begun formal disciplinary proceedings against Connelly until arbitration of the fee dispute had concluded.

### III.

¶26     To decide whether a fee charged constitutes a reasonable fee, for purposes both of arbitration and formal disciplinary proceedings, we look to ER 1.5. That rule requires that a lawyer's fee be reasonable and then lists eight factors "to be considered in determining the reasonableness of a fee." Ariz. R. Sup. Ct. 42, ER 1.5(a)(1)-(8); *see Hirschfeld,* 192 Ariz. at 43 ¶ 15, 960 P.2d at 643. The eight factors are:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for

12

similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship  with the client;
(7) the experience, reputation and ability of the lawyer or lawyers performing the services; and
(8) whether the fee is fixed or contingent.

Ariz. R. Sup. Ct. 42, ER 1.5(a).  Subsection 8 of ER 1.5(a) makes clear that the nature of the fee agreed upon by the lawyer and client plays an important role in considering the reasonableness of the fee.  Because Connelly and Richman agreed to a non-refundable flat fee, that factor affects the analysis of whether Connelly charged a reasonable fee.

**A.**

¶27      A non-refundable flat fee represents one type of fixed fee agreement.  We have held that non-refundable retainers are not per se violations of Ethical Rule 1.5 and "a flat fee charged for specific legal services can be proper." *Hirschfeld*, 192 Ariz. at 43 ¶ 17, 960 P.2d at 643.  We have also explained that "[r]egardless of how [a] fee is characterized . . . each [fee agreement] must be carefully examined on its own facts for reasonableness." *Id*.  Finally, like other fee arrangements, non-refundable flat fees are subject to retrospective analysis. *See In the Matter of Swartz*, 141 Ariz. 266, 273, 686 P.2d 1236, 1243 (1984) ("We hold . . . that if at the conclusion of a lawyer's services it appears that a fee, which seemed reasonable when agreed

13

upon, has become excessive, the attorney may not stand upon the contract; he must reduce the fee.").

¶28 The State Bar's Committee on the Rules of Professional Conduct (the Committee) has provided useful guidance in understanding the nature and proper use of flat fees. A non-refundable fee agreement is one "under which the attorney may be entitled to the fee regardless of whether he or she actually performs the services (or some portion of the services) called for in the agreement." State Bar of Ariz. Comm. on Prof'l Conduct, Op. 99-02 at 4 n.2. Furthermore, a flat fee, which may or may not be refundable, "describes an agreement whereby the attorney renders a specified legal service for an amount that is fixed at the start of the representation." *Id*. at 6. Similarly, the Restatement (Third) of the Law Governing Lawyers, defines a non-refundable flat fee as "a lump-sum fee constituting complete payment for the lawyer's services." Restatement § 38 cmt. g (1998).[7] According to the Committee, legal services typically performed in non-refundable flat fee agreements are "self-contained task[s] that can easily be described from start to finish, such as . . . handling a litigation

---

[7] A non-refundable fee differs from a non-refundable retainer or an advance payment. Unlike a non-refundable fee, a non-refundable retainer "is a fee paid, apart from any other compensation, to ensure that a lawyer will be available for the client if required" and "an advance payment [is one] from which fees will be subtracted." Restatement § 34 cmt. e (1998). A non-refundable fee, on the other hand, is a "a lump-sum fee constituting the entire payment for a lawyer's services in a matter." *Id.*

14

from complaint to judgment." State Bar of Ariz. Comm. on Prof'l Conduct, Op. 99-02 at 6.

¶29 A non-refundable flat fee reflects "a negotiated element of risk sharing between attorney and client" whereby the "attorney takes the risk that she will do more work than planned, without additional compensation; and the client, in return, agrees that the attorney will earn the agreed-upon amount, even if that amount would exceed the attorney's usual hourly rate" because "the client often has limited resources and therefore requires the certainty of a pre-set fee." *Id*. at 7. Because a non-refundable flat fee reflects a balancing of the risk to both client and lawyer, a flat fee can be larger than the fee generated by hourly rates without being excessive. *Swartz*, 141 Ariz. at 272-73, 686 P.2d at 1242-43; *see also* GEOFFREY C. HAZARD, THE LAW OF LAWYERING, Vol. I, § 8.15 at 8-34 (2001) (non-refundable flat fees benefit lawyers "who are confident of their ability to judge the cost of providing specific legal services" and clients who "appreciate . . . definite costs for legal services . . . [that] are . . . capped").

**B.**

¶30 When parties have agreed to binding fee arbitration, an arbitrator should determine the reasonableness of a fee by looking to the factors set forth in ER 1.5. If the parties adopted a non-refundable flat fee, the arbitrator should consider the circumstances under which the attorney and client agreed to the

15

fee, whether the attorney and client negotiated for and recognized the risks involved with this type of fee, whether the legal services covered by the fee constituted a self-contained task, and the specificity with which the attorney described the legal services to be performed in the fee agreement.

¶**31**     Although the Hearing Officer in this case considered the eight factors listed under ER 1.5 and noted that Connelly charged a non-refundable fixed fee,[8] she did not discuss the

---

[8]     The Hearing Officer made the following findings based on the factors in ER 1.5:

> (1) In this case, [Connelly] demonstrated that the amount of time and labor initially appeared to be great and that Richman's case could be complicated by additional charges against the client.  Clearly a highly skilled criminal defense attorney was needed to perform the service properly;
> (2) There was no evidence presented that acceptance of Richman's case precluded [Connelly] from accepting other employment;
> (3) Witness Kimerer indicated that the fee customarily charged in the locality for similar legal services was in the range of $1,500-$15,000 . . . but that a fee of $20,000-$25,000 once the case was completed was not unreasonable;
> (4) The amount involved was large, however, the results obtained in the case were "extraordinary," according to Witness Black;
> (5) The client was a difficult and needy client, and the case required swift movement in order to obtain the result achieved, therefore there were some time limitations imposed by the client and the circumstances;
> (6) There had been a previous relationship with the client;
> (7) Respondent clearly had the requisite skills, experience, and reputation to handle such a case;
> (8) The fee was fixed and non-refundable.

Hr'g Officer 9Y's Report and Recommendation at 9.

16

appropriateness of the non-refundable flat fee in light of the negotiated risk involved and the type of legal services provided. That failure constituted error.

**IV.**

¶32     The question remaining for resolution involves the appropriate remedy.  Because the Hearing Officer did not fully consider the impact of the flat fee agreement, we must remand for an additional hearing, either to the fee arbitration program or to the Hearing Officer.  For the reasons discussed above, we have concluded that the State Bar should not allow lawyers and clients who have contractually agreed to submit fee disputes to arbitration to avoid that agreement.  We therefore vacate the report of the Hearing Officer and the decision of the Disciplinary Commission and remand this matter for arbitration pursuant to the State Bar's Rules of Arbitration of Fee Disputes.


_____
Ruth V. McGregor, Vice Chief Justice

CONCURRING:


_____
Charles E. Jones, Chief Justice


_____
Stanley G. Feldman, Justice


_____
Rebecca White Berch, Justice

17