FILED

MAR 05 2012

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

In re:                          )    BAP No.   AZ-11-1401-PaDJu
                                )
IMG TRANSPORT, L.L.C.,          )    Bk. No.   09-28626
                                )
             Debtor.            )
_____ )
                                )
IMG TRANSPORT, L.L.C.,          )
                                )
             Appellant,         )
                                )
v.                              )    **M E M O R A N D U M**[1]
                                )
LAWRENCE J. WARFIELD, Chapter   )
7 Trustee,                      )
                                )
             Appellee.          )
_____ )

Argued and Submitted on February 24, 2012
at Phoenix, Arizona

Filed - March 5, 2012

Appeal from the United States Bankruptcy Court
for the District of Arizona

Honorable James M. Marlar, Chief Bankruptcy Judge, Presiding

Appearances:    Scott D. Gibson appeared for appellant IMG
                Transport, L.L.C.; Terry A. Dake appeared for
                appellee Lawrence J. Warfield, Chapter 7 Trustee.

Before: PAPPAS, DUNN and JURY, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Gibson, Nakamura & Green ("GNG"), the law firm that represents chapter 7[2] debtor IMG Transport, L.L.C. ("Debtor"), appeals the bankruptcy court's order requiring it to disgorge $8,794.62 in fees it received to appellee Lawrence Warfield, the trustee in Debtor's bankruptcy case ("Trustee").  We AFFIRM.

## I.  FACTS

Debtor was a Yuma trucking company.  GNG, a Tucson law firm, was retained by Debtor on November 5, 2009, to represent the company in a case under chapter 7 of the Bankruptcy Code.  For its services, Debtor agreed to pay GNG a flat fee of $12,000, plus expenses.  Acting through GNG partner Scott D. Gibson ("Gibson"), Debtor's petition was filed on November 6, 2009.  On November 23, 2009, GNG filed a Rule 2016(b) Disclosure of Compensation of Attorney for Debtor, stating that it had received $12,000 from Debtor prior to the filing of the bankruptcy case to represent Debtor.

Trustee was appointed to serve as chapter 7 trustee.  On December 4, 2009, Debtor's schedules and Statement of Financial Affairs ("SOFA") were filed.  The schedules disclose that Debtor owned only four assets and that it had no secured creditors and seven unsecured creditors, only one of which was listed as disputed.  Debtor's responses to the relevant questions on the SOFA were brief and unremarkable.

The § 341 meeting of creditors took place in Yuma on December 16, 2009.  Gibson appeared representing Debtor at the

---

[2] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

meeting.

The bankruptcy case was otherwise uneventful until May 31, 2011, when Trustee filed a Motion to Compel Turnover (the "Turnover Motion"). In it, Trustee requested that the bankruptcy court review the $12,000 fee paid by Debtor to GNG under § 329(b). Trustee argued that, under the circumstances, the $12,000 flat fee paid to GNG was "patently unreasonable," and that a fee of $3,000 was reasonable for an experienced bankruptcy lawyer to represent a chapter 7 corporate debtor in an uncomplicated case with few assets and creditors. To support his view that the amount paid to GNG was excessive, Trustee cited nine corporate chapter 7 cases filed in the Yuma division of the Arizona bankruptcy court in the same year as the IMG case, in which the attorney's fees ranged from $1,500 to $4,000. Trustee therefore sought an order requiring that $9,000 of GNG's $12,000 fee be disgorged and paid over to Trustee.

GNG filed a response to the Turnover Motion on June 16, 2011. In it, GNG noted that Debtor had retained GNG pursuant to a nonrefundable flat fee agreement. In setting the amount of the fee in this case, GNG had been particularly concerned about the risks associated with representing a client that had just lost in "extremely extensive litigation for a personal injury matter"; that the client's principal did not speak English; that there would be significant costs for GNG lawyers to travel between Tucson and Yuma; and that there was the potential for other proceedings that might arise in the case. GNG argued that Arizona state case law supported the reasonableness of a flat fee arrangement even where, after the fact, the payment to counsel

-3-

exceeded usual billing rates. Attached to GNG's response was a copy of the retainer letter and a statement detailing the time and services provided by GNG to Debtor.

Trustee filed a reply on June 21, 2011, contending that while Debtor had the right to engage its choice of attorney, it could not do so at unreasonable cost to the bankruptcy estate. Trustee challenged several of the entries in the GNG fee statement. For example, Trustee pointed out that GNG's statement allocated 10.5 hours at Gibson's $395 partner billing rate for his preparation and travel to attend the fifteen-minute § 341 meeting in Yuma. Trustee questioned why a local attorney could not have been engaged to appear at the meeting for considerably less than $4,147.50. Trustee's other criticisms of GNG's billing statement included its twice billing for paralegal time to make photocopies and billing 2.5 hours of Gibson's time for preparing a simple, three-page bankruptcy petition.

The bankruptcy court held a hearing on Trustee's motion on June 24, 2011. After the parties made substantially the same arguments as those in the motion, response and reply, the court took the issues under advisement to, in its words, review the pleadings and the fee statement with a "fine tooth comb."

The bankruptcy court entered an order disposing of the Turnover Motion on July 19, 2011 (the "Disgorgement Order"). In the Disgorgement Order, the court found that: (1) Debtor's schedules listed only five non-insider creditors, very little tangible personal property, and no real property; (2) Debtor was required to respond to few of the twenty-five questions in the form Statement of Financial Affairs; (3) other than the pleadings

-4-

regarding the Turnover Motion, the petition, and some minor matters, "little else of substance performed by the Debtor's attorneys appears in the file." The bankruptcy court determined that $3,000 was a reasonable fee for the work done by GNG. After also allowing GNG's costs, the balance of the $12,000 retainer, $8,794.62, was ordered disgorged by GNG to Trustee.

Debtor filed a timely appeal on July 20, 2011.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. § 1334(b) and § 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court abused its discretion in ordering GNG to disgorge $8,794.00 to Trustee.

## STANDARD OF REVIEW

An order reviewing fees and directing a debtor's attorney to disgorge excessive amounts paid prior to the bankruptcy filing under § 329(b) is reviewed for abuse of discretion. Hale v. United States Tr., 509 F.3d 1139, 1147 (9th Cir. 2007).

In applying an abuse of discretion test, we first "determine de novo whether the [bankruptcy] court identified the correct legal rule to apply to the relief requested." United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc). If the bankruptcy court identified the correct legal rule, we then determine whether its "application of the correct legal standard [to the facts] was (1) illogical, (2)implausible, or (3) without support in inferences that may be drawn from the facts in the record." Id. If the bankruptcy court did not identify the

-5-

correct legal rule, or its application of the correct legal standard to the facts was illogical, implausible, or without support in inferences that may be drawn from the facts in the record, then the bankruptcy court has abused its discretion. Id.

**DISCUSSION**

Section 329(a) requires an attorney representing a debtor to disclose the amount of all compensation "paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case . . . ." Section 329(b), in turn, provides that "[i]f such compensation exceeds the reasonable value of any such services, the [bankruptcy] court may cancel any such agreement, or order the return of any such payment[.]" It is undisputed in this appeal that, prior to the filing of its petition, Debtor paid $12,000 to GNG to represent the company in its bankruptcy case.

The burden is upon the applicant to demonstrate that the fees requested are reasonable. Law Offices of David A. Boone v. Derham-Burk (In re Eliapo), 298 B.R. 392, 402 (9th Cir. BAP 2003), aff'd in part, rev'd in part on other grounds, 468 F.3d 592 (9th Cir. 2006); see also Hensley v. Eckerhart, 461 U.S. 424, 437 (1983) ("Fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates."). The standard applied under § 329(b) to determine the reasonable value of the debtor's attorney's fees is the same as that set forth in § 330(a) for determining the amount of reasonable compensation for a bankruptcy estate's professionals. Am. Law Ctr. PC v. Stanley

(In re Jastrem), 253 F.3d 438, 443 (9th Cir. 2001) (citing Hale v. United States Tr. (In re Basham), 208 B.R. 926 (9th Cir. BAP 1997), aff'd 152 F.3d 924 (9th Cir. 1998)). Under § 330(a)(3), to determine a reasonable fee, the bankruptcy court should consider "the nature, the extent, and the value of such services, taking into account all relevant factors . . . ." Included among those factors are:

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

§ 330(a)(3) (emphasis added); In re Basham, 208 B.R. at 931.

This Panel has analyzed §330(a) on numerous occasions and has also identified factors for the bankruptcy court to consider

7

when determining reasonableness, including:

> (a) Were the services authorized?
> (b) Were the services necessary or beneficial to the administration of the estate at the time they were rendered?
> (c) Are the services adequately documented?
> (d) Are the fees required reasonable, taking into consideration the factors set forth in section 330(a)(3)?
> (e) In making the determination, the court must consider whether the professional exercised reasonable billing judgment.

Roberts, Sheridan & Kotel, P.C. v. Bergen Brunswig Drug Co. (In re Mednet), 251 B.R. 103, 108 (9th Cir. BAP 2000). In Leichty v. Neary (In re Strand), 375 F.3d 854, 880 (9th Cir. 2004), the Ninth Circuit confirmed that the In re Mednet factors provided the "correct standard" for an appellate court to evaluate a reasonableness determination regarding attorney's fees in a bankruptcy case.

In addition, the Ninth Circuit recently ruled that a trial court may rely on its own knowledge of reasonable and proper fees in determining the reasonableness of attorney's fees.

> This court has never addressed whether it is proper for a [trial] court to rely on its own familiarity with the legal market. Other circuit courts have held that judges are justified in relying on their own knowledge of customary rates and their experience concerning reasonable and proper fees. See, e.g., Norman v. Hous. Auth. of City of Montgomery, 836 F.2d 1292, 1303 (11th Cir. 1988) (courts are experts as to the reasonableness of attorney fees and award may be based on court's own experience); In re U.S. Golf Corp., 639 F.2d 1197, 1207 (5th Cir. 1981) (same). We agree.

Ingram v. Oroudjian, 647 F.3d 925, 928 (9th Cir. 2011).

At the hearing on June 24, 2011, GNG argued that the bankruptcy court should not order disgorgement because flat fee arrangements were reasonable under Arizona law. The bankruptcy court disagreed, pointing out that prebankruptcy transfers from a

debtor to its counsel, even if proper under state law, were unquestionably subject to review by the bankruptcy court under §§ 329 and 330. To further explain its views, the court referred the parties to its recent decision regarding the methodology and analysis employed by the court in determining the reasonableness of fees. In re AVC Villa Del Lago, 2010 WL 119830 (Bankr. D. Ariz. 2010). The bankruptcy court summarized the decision in these words:

> [This] is not an easy job for a judge to do. I have to sit there and take apart [counsel's] fee app piece by piece. I then look at what happened in the file. I then have to make an internal judgment as to each entry as to whether or not I think the debtor's lawyer, whoever it is being challenged, spent too much time or not. I adjust it. That's the process.

Hr'g Tr. 10:22-28, June 24, 2011.

In the Disgorgement Order, the bankruptcy court noted that Debtor's schedules listed only a few creditors and assets and that little information was required to respond to the questions in the SOFA. It also noted that "[o]ther than these pleadings, the petition, a motion and order to extend time to file schedules, etc., little else of substance performed by the debtor's attorneys, appears in the file." Id. In addition, the bankruptcy court was cognizant of Trustee's contention that it was unreasonable in this case for GNG to charge Debtor over $4,000 for Gibson's travel to attend a brief § 341 meeting in Yuma.

GNG had the burden of showing that its fees were reasonable. In re Eliapo, 298 B.R. at 402. Because GNG submitted a copy of both the retainer agreement with Debtor, and a detailed list of the services it rendered in this case, we may assume that the

9

bankruptcy court considered the nature and extent of GNG's services provided to Debtor. It appears that the bankruptcy court applied the correct legal rules in evaluating the reasonableness of GNG's fees, as discussed in its thoughtful prior decision in In re AVC Villa Del Lago. Based upon the record before it, as informed by the experience of the seasoned bankruptcy judge, the bankruptcy court determined that $3,000 was a reasonable fee for GNG's services under the facts of this case.

GNG disagrees with the bankruptcy court's decision. In the bankruptcy court, and again in its opening brief on appeal, GNG argued that the bankruptcy court erred because, under Arizona law, a nonrefundable flat fee "is a reasonable fee arrangement which should not be subject to critical review by the courts[.]" GNG points out that "such flat fee arrangements are part of the negotiation of arrangements between client and attorney, which should be allowed to stand, even if ultimately the amount of the services rendered is less than the hourly rate of fees." GNG Op. Br. at 9. GNG cites In re Connolly, 55 P.3d 756 (Ariz. 2002), for support.

Of course, on its surface, GNG's assertion that the bankruptcy court may not examine the reasonableness of fee agreements sanctioned under state law as "reasonable" would seem to conflict directly with § 329(b), which expressly authorizes a bankruptcy court to review a debtor's fee arrangement with its counsel, to "cancel such agreement," and to order an attorney to disgorge any payments received from a debtor "[i]f such compensation exceeds the reasonable value of any such services . . . ." In the face of such conflict, state law must yield.

10

_Motor Vehicle Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)_, ___ F.3d. ____, 2012 WL 178998 *13 (9th Cir. 2012) ("It is a familiar and well-established principle that the Supremacy Clause . . . invalidates state laws that 'interfere with, or are contrary to,' federal law.) (quoting _Hillsborough Cnty. v. Automated Med. Laboratories, Inc._, 471 U.S. 707, 712 (1985).

However, as Trustee points out, even if state law should influence the bankruptcy court's determination of the reasonableness of GNG's fees in this case, _In re Connolly_ does not support GNG's position. More precisely, the _Connolly_ court ruled that:

> We have also explained that "regardless of how [a] fee is characterized . . . each [fee agreement] must be carefully examined on its own facts for reasonableness." _Id._ Finally, like other fee arrangements, non-refundable flat fees are subject to retrospective analysis. _See_ _In the Matter of Swartz_, 141 Ariz. 266, 273, 686 P.2d 1236, 1243 (1984) ("We hold . . . that if at the conclusion of a lawyer's services it appears that a fee, which seemed reasonable when agreed upon, has become excessive, the attorney may not stand upon the contract; he must reduce the fee.").

_In re Connolly_, 55 P.3d at 762. In other words, the Arizona case law on flat fee agreements appears consistent with § 329(b) in that such an arrangement "must be carefully examined on its own facts for reasonableness" and excessive fees reduced. _Id._

GNG abandoned this argument in its reply brief: "Appellant agrees that the Court has the ability to review fees of Debtor's counsel for reasonableness even under a 'flat fee' arrangement such as here." GNG Reply Br. at 5. Instead, GNG repeated its earlier argument that "the determination of the facts still requires some modicum of evidence and an opportunity to provide

11

competing evidence. . . . [T]hat opportunity was never provided in this case." GNG Reply Br. at 5. GNG also argues it should have had an opportunity to present evidence on the reasonableness of its fees. Id.

GNG's suggestion that it was not given a fair opportunity to prove up the value of its fees in this case is not supported by the record. Indeed, GNG explicitly waived the bankruptcy court's offer of a continuance to allow it to supplement the pleadings:

THE COURT: Are you seeking a continuance to buff up the file?

GIBSON: No, Your Honor. I'm asking you to rule —

THE COURT: Okay.

GIBSON: — based upon the record before you.

Hr'g Tr. 8:21-25, June 24, 2011.[3]

Even if GNG had not waived the bankruptcy court's offer of a continuance, as noted above, in applying § 330(a)(3) to the facts of a case, the Ninth Circuit has ruled that a court may rely on its own knowledge of reasonable and proper fees in determining the reasonableness of attorney's fees. Oroudjian, 647 F.3d at 928. In other words, a bankruptcy court does not necessarily need expert testimony to properly evaluate the reasonableness of professional fees for the services rendered by the debtor's

---

[3] At oral argument before the Panel, Gibson insisted that this colloquy occurred early in the hearing before the bankruptcy court, and that he later repeated his request for an evidentiary hearing. This is incorrect. We have carefully examined the transcript of the June 24, 2011 hearing. Gibson made no further request for an opportunity to submit evidence after the colloquy quoted above.

attorney in a bankruptcy case. <u>Boleman Law Firm, P.C. v. United States</u>, 355 B.R. 548, 552 (E.D. Va. 2006) (sitting as a bankruptcy appeals court, ruling that expert testimony is not necessary to establish the value of an attorney's services since a bankruptcy judge is presumed knowledgeable as to fees charged by attorneys in general and as to the quality of legal work presented to him by particular attorneys); <u>In re Monahan Ford Corp. of Flushing</u>, 390 B.R. 493, 504 (Bankr. E.D.N.Y. 2008) (expert testimony relating to a fee application excluded because the court was itself an expert and the expert testimony would not assist the trier of fact); <u>In re Terex Corp.</u>, 70 B.R. 996, 1001 (Bankr. N.D. Ohio 1987)(expert testimony as to the reasonableness of fees excluded).

In sum, we conclude that the bankruptcy court, in determining that $12,000 was excessive and that a reasonable fee for GNG's services in this case was $3,000, applied the correct law, §§ 329(b) and 330(a), and that its findings were not illogical, implausible, or without support in inferences that may be drawn from the facts in the record. As a result, the bankruptcy court did not abuse its discretion in ordering GNG to disgorge to Trustee the amount it received from Debtor for fees in excess of $3,000 plus costs.

## CONCLUSION

The bankruptcy court's Disgorgement Order is AFFIRMED.