STATE ex rel. Jeremiah W. NIXON, Attorney General, State of Missouri, Respondent,

v.

Lorne BASS, Defendant,

and

Hanrahan Trapp, P.C., Appellant.

No. SC 89666.

Supreme Court of Missouri, En Banc.

March 31, 2009.

William P. Nacy, Hanrahan Trapp, P.C., Jefferson City, MO, for Appellant.

Chris Koster, Atty. Gen., Christie Kincannon, Special Asst. Atty. Gen., Doug Noland, Asst. Atty. Gen., Paul Harper, Asst. Atty. Gen., Jefferson City, MO, for Respondent.

ZEL M. FISCHER, Judge.

Hanrahan Trapp, P.C., appeals the circuit court's judgment granting the State of Missouri's motion for summary judgment. Hanrahan Trapp claims the circuit court erred because: (1) the State failed to file a reply to its counterclaim and (2) a genuine issue of material fact exists as to whether the funds at issue were an asset belonging

to or due to Lorne Bass because Bass had assigned the funds to Hanrahan Trapp prior to the State's filing its petition for incarceration reimbursement. Reversed and remanded.

## FACTS

On March 29, 2006, Bass was arrested and charged with drug possession. At the time of his arrest, the Cole County sheriff seized $4,421 from his possession. On April 3, 2006, the State filed a petition seeking forfeiture of the $4,421. Hanrahan Trapp represented Bass in his drug possession case. On April 13, 2006, Bass signed an authorization to release $4,421 to Hanrahan Trapp for legal fees. On June 12, 2006, Bass entered a guilty plea and was sentenced to three years in prison. On June 16, 2006, the State dismissed its forfeiture petition. Later that same day, the State filed its petition for incarceration reimbursement claiming the $4,421 being held by the county. Hanrahan Trapp was granted leave to intervene. The State moves for summary judgment, and the circuit court entered judgment in favor of the State on June 29, 2007. Hanrahan Trapp appeals.

## STANDARD OF REVIEW

 This Court's review of summary judgment is essentially de novo. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). "The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially." *Id.* Summary judgment is proper only if "the motion, the response, [and] the reply … show that there is no genuine issue as to any material fact [and] that the moving party is entitled to judgment as a matter of law." Rule 74.04(c)(6).

## ANALYSIS

██ Hanrahan Trapp contends that summary judgment should not have been granted to the State because there was a genuine issue of material fact that the funds at issue were not subject to incarceration reimbursement in that the funds all, or in part, had previously been assigned to Hanrahan Trapp.

Pursuant to §§ 217.825 to 217.841, RSMo 2000, the State is authorized to seek reimbursement from a current or former offender for the expense of housing the offender in a state correctional facility. The reimbursement comes from the offender's assets. Assets are defined by § 217.827(1)(a), RSMo 2000, as:

> [P]roperty, tangible or intangible, real or personal, belonging to or due an offender or a former offender, including income or payments to such offender from Social Security, workers' compensation, veterans' compensation, pension benefits, previously earned salary or wages, bonuses, annuities, retirement benefits, or from any other source whatsoever …

It is undisputed that Bass is currently serving time in a Missouri correctional facility. The issue is whether the funds held by Cole County are assets belonging to Bass.

Hanrahan Trapp's response to the state's motion for summary judgment relies on three documents attached to the pleadings for the argument that a genuine issue of material fact exists as to whether the $4,421 is Bass' asset.

1. The "Authorization for the Release of Funds by Inmate," which was executed by Bass and provides:

> I, Loren Bass, hereby authorize the release of any and all of my funds currently in the possession of Cole County,

Missouri (believed to be approximately $4421.00) to the firm of Hanrahan Trapp, PC as the initial retainer for legal representation fees.

2. The affidavit of Bass, which provided in part, "[b]ut for my assurances that I would pay Hanrahan Trapp, P.C., such fees, Hanrahan Trapp, P.C., would not have undertaken to represent me" and that but for the State's agreement to dismiss the pending forfeiture action and release the funds to Hanrahan Trapp "as payment of the remainder of my legal fees . . . I would not have entered into the said plea agreement."

3. The affidavit of the assistant prosecuting attorney who negotiated the plea agreement, which provided in part that dismissal of the forfeiture action was part of the agreement, and that "[t]he State agreed to dismiss said action knowing that Defendant Bass would use the seized funds to pay outstanding legal fees owed to Hanrahan Trapp, P.C."

Had Bass' release said "for payment of legal fees," then *Greater K.C. Baptist & Cmty. Hosp. Ass'n, Inc. v. Businessmen's Assurance Co.*, 585 S.W.2d 118 (Mo.App. 1979) ("*BMA*"), and *Halvorson v. Commerce Trust Co.*, 222 S.W. 897 (Mo.App. 1920), would control, but Bass' release did not state that it was for payment of legal fees. It merely said the money was to be used as an initial retainer for legal representation fees.[1]

The wording of the authorization here cannot be fairly distinguished from the language of the instruments at issue in

*BMA*, or in the *Halvorson* case on which *BMA* relied. As in those cases, Bass' intent to transfer rights to specifically identified funds is clearly expressed in the writing. This transfer is plainly supported by consideration, since Bass was aware that Hanrahan Trapp would not perform legal services on his behalf without his execution of the authorization and Hanrahan Trapp in fact represented him thereafter.

 The authorization states that Bass had authorized the release of the seized funds to Hanrahan Trapp "as the initial retainer for legal representation fees." The reference to a legal fee "retainer" leaves open the question whether all, or any portion, of those funds remained Bass' property or, instead, had been earned by Hanrahan Trapp at the time the State's inmate reimbursement rights attached. Where a retainer is paid to an attorney to secure the client's payment of legal fees, the client only retains an interest in the funds "if the retainer has not been earned by the attorney."[2]

Here, two months elapsed between Bass' execution of the authorization and the State's filing of its MIRA petition, and an additional year passed before entry of Judgment on that petition. During that period, Hanrahan Trapp performed legal services for Bass, through conclusion of the criminal proceedings against him. In these circumstances, a genuine issue of material fact existed as to whether all or part of the seized funds had been earned

---

1. Despite the fact that the agreement lacked the words "assign" or "transfer," the *BMA* court found an effective assignment, since "[t]he intention of all concerned is clear."

2. The reference to a legal-fee "retainer" in the authorization arguably could denote fee arrangements other than a security deposit. *See generally Dowling v. Chicago Options Assocs.,*

*Inc.*, 226 Ill.2d 277, 314 Ill.Dec. 725, 875 N.E.2d 1012, 1018–21 (2007); *Iowa Supreme Court Bd. of Prof'l Ethics v. Frerichs*, 671 N.W.2d 470, 475–77 (Iowa 2003); *In re Connelly*, 203 Ariz. 413, 55 P.3d 756, 761–62 (2002); 7A C.J.S. ATTORNEY & CLIENT § 346 (2004); 7 Am Jur.2d, *Attorneys at Law* § 249 (2007).

by Hanrahan Trapp and were no longer Bass' property at the relevant time.[3]

Hanrahan Trapp claims that this Court should order the entry of judgment on its behalf. The issue whether it had in fact earned all or part of the seized funds is a matter of disputed fact. Bass' affidavit stated that he "agreed to pay Hanrahan Trapp, P.C., legal fees of $10,000.00" and that the assignment of the funds being held by the Cole County sheriff was intended to satisfy "the balance of my legal fees." There is no other reference in the record to the terms of the parties' agreement as to Hanrahan Trapp's fees, and specifically concerning when and how those fees would be earned.

## CONCLUSION

A review of the "Authorization for the Release of Funds by Inmate," the affidavit of Bass, and the affidavit of the assistant prosecuting attorney who negotiated the plea demonstrate a genuine issue of material fact exists as to whether Hanrahan Trapp owned all, or part, of the seized funds at the time the State filed its petition under the Missouri Incarceration Reimbursement Act, § 217.825, RSMo 2000 *et seq.* Summary judgment was, therefore,

improper. The judgment is reversed, and the case is remanded.[4]

All concur.

---

**3.** Hanrahan Trapp may have become the owner of some or all of the funds based on its performance of services *after* execution of the authorization. To the extent the funds were assigned merely as security for future legal fees the firm earned, it may be that at the time of the authorization's execution it was merely a "conditional assignment" of the sort described in, *e.g., C & M Developers, Inc. v. Berbiglia, Inc.,* 585 S.W.2d 176, 181 (Mo.App. 1979). But the result would be the same: A genuine issue of material fact exists whether the funds were Bass' or, instead, Hanrahan Trapp's at the time the State's MIRA rights attached, based on Hanrahan Trapp's fulfillment of any condition on its rights as assignee.

**4.** The current record suggests it was only through counsel's efforts that a plea agreement including dismissal of the forfeiture count was negotiated. If the facts are found to be that: the authorization was an essential condition of Bass' retention of counsel and counsel's performance of services for Bass; counsel participated in "creation" of the funds through dismissal of the forfeiture action; and the State knew that the funds it had agreed to release (as a material aspect of Bass' plea agreement) would be used to pay counsel then, this case would be controlled by *State ex rel. Nixon v. Karpierz,* 105 S.W.3d 487 (Mo. banc 2003).